**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection | MDL Docket No. 3115<br>No. 1:24-md-3115-TWT |

**STIPULATION AND ORDER FOR THE PRODUCTION OF
DOCUMENTS AND ESI**

This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties in the above-captioned litigation.

**I.      Production of Documents Originating as Paper**

1.      **TIFFs**.  Documents should be produced as single-page, black and white, group IV 1-bit TIFFs imaged at 300 dpi.  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape) where reasonably possible.  TIFF image files should be provided in an "Images" folder.

2.      Documents containing color need not be produced in color.  However, the parties will consider reasonable requests for reproduction of a color document if an original document contains color necessary to understand the meaning or content of the document.  Any documents produced in color should be produced in JPG format.

3.      **Unitizing Documents**.  Subject to the limitations set forth below, in scanning paper documents, the parties will undertake reasonable efforts to unitize documents to reflect their physical organization.  For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container.  The front cover of the container should be produced immediately before the first responsive document in the container.  The back cover of the container should be produced immediately after the last responsive document in the container.

4.      Nothing in this paragraph shall require the parties to undertake efforts to unitize documents that would be unduly burdensome.  The parties agree to meet and confer to address situations in which a party believes that documents have not been properly unitized.

5.      **Parent-Child Relationships**.  The parties shall undertake reasonable efforts to maintain parent-child relationships within a document family (the association between an attachment and its parent document).  The child document(s)

should be consecutively produced immediately after the parent document. The parties shall undertake reasonable efforts to produce each document with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. Nothing in this paragraph shall require the parties to undertake unduly burdensome efforts to maintain parent-child relationships within a document family for hard copy documents. The parties agree to meet and confer to address situations in which a party believes that parent-child relationships have not been adequately maintained.

6. **Optical Character Recognition**. The producing party shall provide optical character recognition ("OCR") text files for all documents originating as paper. Text files should be in Unicode [UTF-8] format. All references below to 'Unicode' are synonymous with UTF-8. To the extent that documents have been run through OCR software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

7.    **Unique IDs**.  Each TIFF image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC000000001).  A single prefix with a fixed width should be used for each producing party, along with a fixed-width numerical portion. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

8.    **Data Load Files**. Documents shall be provided with: (a) a delimited Concordance-format data file (.dat, .csv, or .txt) [Unicode]; and (b) an image load file (.lfp, .opt, or .dii), as detailed in Appendix 1.

## II.    Production of ESI

9.    **TIFFs**.  Documents should be produced as single-page, black and white, group IV 1-bit TIFFs imaged at 300 dpi.  Whenever it is practical to do so, the document's original orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.

10.    **Extracted Text Files**. For each document, a single Unicode text file shall be provided along with the image files and metadata.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall

not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably available unless the document is an image file or contains redactions. In these instances a text file created using OCR should be produced in lieu of extracted text.

11. **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

12. **Parent-Child Relationships**. The relationship between attachments or embedded files to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. For purposes of this protocol, hyperlinked documents are addressed in Paragraph 20.

13. **Native Format**. Excels, PowerPoints, delimited text files, audio files, video files, and additional documents of a type that cannot be reasonably converted

5

to useful TIFF images shall be produced as native files along with extracted text and metadata identified in Appendix 2. Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.

14.    The parties will consider reasonable requests for the reproduction in native format of documents initially produced in TIFF format in the event that the TIFF format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers. The producing party shall be permitted to apply native redactions but shall not be required to produce any files requiring redaction in native format.

15.    To the extent that the information in a native file must be redacted, the producing party may produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image. The producing party shall make reasonable efforts to ensure redacted TIFF images of native files are legible and usable. If redacting TIFF images and to the extent that any of the following can be automated, the producing party should make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths and row heights to avoid numbers or other text content being truncated or appearing as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in

6

the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, the requesting party may ask the producing party to take reasonable steps to manually undertake the foregoing for a reasonable number of documents identified by Bates number by the requesting party to the extent the document was originally produced with concealed information. The producing party shall not unreasonably deny such a request.

16.    **Request for Native Files**.   Other than the file types referenced in paragraph 13 above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain non-email documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format.  The producing party shall not unreasonably deny such requests.  In the event the producing party agrees to produce non-email documents in native format, the producing party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Appendix 2.  Documents and overlays shall be produced within 21 days of the request unless the request is reasonably denied or the parties agree to a

different time.  The parties shall meet and confer concerning any request for native files before seeking Court intervention.  In the event the Court orders a producing party to produce documents in native format, documents and overlays shall be produced within 14 days of the order or such other time as the Court may order.

17.    **Tracked Changes and Comments**.  To the extent practicable, documents that contain tracked changes or comments will be produced with the tracked changes and comments appearing on the image.  A receiving party can request a reasonable number of the native versions of such documents consistent with paragraph 16 and the producing party's rights to withhold privileged material.  To the extent practicable, documents containing track changes or comments will have the "has hidden content" metadata populated with a "y," or otherwise will include metadata that indicates that the document contains tracked changes or comments.

18.    **Password Protected Native Files**.  The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available or, alternatively, the producing party will take reasonable steps to provide a non-password protected replacement file for any responsive non-privileged documents.

19.    **Embedded Documents.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, and footers, may be culled from

review and, if reasonably possible, substantive embedded objects will be extracted and produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc.*) via the BegAttach and EndAttach fields referenced in Appendix 2. Related documents will be produced within a continuous Bates range.

20.    **Hyperlinks**. Document(s) that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document residing at the location to which that hyperlink points. A Requesting Party may submit a reasonable and proportional number of potentially relevant hyperlinks contained within produced documents to a particular Producing Party by identifying the Bates number and URL or link text for each requested link. The Producing Party will engage in reasonable and proportional efforts to locate existing hyperlinked documents at that location (even if the location of such hyperlinked document is a non-custodial source or possessed by a custodian whose documents have not been designated for collection) and either identify it by Bates number or produce responsive, non-produced, and non-privileged documents. The number of hyperlinks a requesting party may identify to a producing party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome. Notwithstanding the foregoing, nothing herein shall relieve

9

a party from its obligation pursuant to Rule 26 and 34 to search for relevant, responsive information.

21.    **Data Load Files**.  Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode] and (b) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1.  Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

22.    **Metadata**. Appendix 2 sets forth the metadata fields that must be produced to the extent that metadata exists for a particular document subject to the limitations discussed below.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data.  The parties are not obligated to populate manually any metadata fields except the following: ProdBeg, ProdEnd, ProdBegAttach, ProdEndAttach, Custodian, DupCustodian, Confidentiality, Redacted, NativeLink, and TextLink.

23.    **Culling/Filtering.**  The producing party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library NIST hash set list. To the extent a producing party identifies a file type not listed in the National Software Reference Library NIST hash set that does not appear to contain responsive

information and which recurs in its document collection, the parties shall meet and confer regarding whether to include such file types in the culling/filtering required by this Section.

24. **Deduplication and Email Threading**. Documents should be deduplicated at the family-group level provided that the producing party identifies the additional custodians in an Additional Custodian field. The Parties may utilize email threading analytics tools to exclude duplicative or "non-inclusive" content wholly contained within later-in-time or "inclusive" email threads, provided that the producing party treats all emails that have unique substantive content as inclusive emails that will not be excluded from production, including emails containing attachments that appear in earlier-in-time iterations of a thread.

25. The Parties will meet and confer to discuss the methods to collect message or chat ESI, and the Parties agree to meet and confer regarding the processing and production format for relevant communications in collaboration software prior to any production of chat messages. In the case of chat messages generated from the use of chat or messaging platforms, the parties agree that it is necessary to produce relevant messages with the context of reasonably adjacent prior-in-time and subsequent in-time chat messages.

## III.    Production of Databases and Other Structured Data

26.    The parties shall produce structured data ESI in a reasonable, proportional, and reasonably useable format that does not degrade the usefulness of the data.  Should a receiving party object to the way structured data has been produced, the parties will meet and confer regarding the alleged deficiencies in the structured data production.

## IV.    Processing of Third-Party Documents

27.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

28.    The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties.  If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within five (5) business days.  The Issuing Party shall have no obligation to convert non-party document productions to the format defined in this ESI Protocol.

29.    Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

## V.     Format of Production

30.     The following specifications govern the production of all documents regardless of source, unless otherwise noted in this ESI Protocol:

31.     **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files.  Documents in the possession of a natural person should be produced in such fashion as to identify the natural person.  Documents in the possession of a department, group, entity, or other common facility should be produced in such a fashion as to identify the department, group, entity, or facility.  A producing party shall use a uniform description of a particular custodian across productions.

32.     **Foreign Language**.  Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

33.     **Dates**. All documents shall be processed so as to show the date and time in UTC or Eastern Standard Time.

34.     **Production Media**. The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share, or (b) if the interest of preserving the confidentiality of the information produced outweighs the

speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media should be write protected and encrypted before it is produced.

35.    **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, *etc*.  The compressed file should be named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "GM Production 20180508-001").  If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *In re: Consumer Vehicle Driving Data Tracking Collection*, MDL Docket No. 1:24-md-3115-TWT; (b) the Bates Number range of the materials contained on the media; (c) and the filename(s) of the compressed file(s) contained on the media such as the example included above.

36.    **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

37.    **Encrypted Production Media**. To the extent production media is encrypted before it is produced, the producing party shall contemporaneously transmit the credentials necessary to decrypt the production data.

38.    **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

39.    **Redactions.**   No redactions for relevance may be made within a produced document or ESI item without prior agreement of the receiving party or order of Court. In circumstances where the producing party has sought agreement from the receiving party regarding redactions that the producing party believes it should be permitted to make, and the receiving party has not agreed to such redactions, but there is a deadline requiring the production of the documents notwithstanding the parties active dispute relating to redactions, the producing party may produce the documents with such redactions.  However, such a production with redactions shall be without prejudice to the receiving party's right to contest the permissibility of the redactions. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated.

## VI.    Search Methodology and Exclusions From Review

40.    **Search Methodology.**  The parties shall meet and confer as needed regarding search methods, if any, used to identify responsive documents and ESI. Prior to a party using a search methodology (if any) to identify documents for production, the search terms, keywords, date limitations, and custodians applied to the data searched will be disclosed by the producing party to the requesting party. A producing party that is claiming unreasonable burden or non-proportionality on search terms proposed by the receiving party will provide a hit report to substantiate its position.  A hit report shall contain, for each custodian or data source in the document collection where the terms were applied, (a) the number of documents with hits for that term; (b) the number of unique documents; and (c) the number of family members requiring review in connection with all documents with hits.

41.    Should a Producing Party wish to use any technology-based process or automated method not specifically addressed by this Order to exclude documents from any review or production, notice to the Receiving Party must be made prior to the use of any such method or methodology.  Should a party wish to use TAR to exclude documents from its review, the party intending to use TAR will disclose its intended methodology and the parties will meet and confer to resolve any disputes relating to the use of TAR.

## VII.  Privilege Logs

42.  **Preparation of Privilege Logs.**  The obligation to provide a log of privileged or work product materials pursuant to Federal Rule of Civil Procedure 26(b)(5)(A) presumptively shall not apply to:

    a.    Communications between a Party and its Outside Counsel transmitted on or after the March 11, 2024 New York Times article titled Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies.

    b.    Attorney-client privileged communications between a Party and its In-House Counsel transmitted or attorney work product generated by In-House Counsel on or after the March 11, 2024 New York Times article titled Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies.

    c.    Attorney work product created by Outside Counsel for the Parties on or after the March 11, 2024 New York Times article titled Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies.

    d.    Internal communications within Outside Counsel and In-House Counsel for the parties occurring on or after the March 11, 2024

New York Times article titled Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies;

e.    Communications between a Party or its Outside Counsel and/or In-House Counsel and any expert or consultant retained or consulted with relating to this litigation sent on or after the March 11, 2024 New York Times article titled Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies.

f.    Attorney-client privileged communications transmitted, or attorney work product generated, after June 30, 2024.

43.    The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner for documents withheld from production and/or ordered by the Court if not voluntarily produced. Privilege logs will be produced in Excel format, which allows the Receiving Party to search and sort any and all columns and entries on the privilege log.  For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent reasonably available: created/last modified dates, sent date, author(s), custodian(s), recipient(s), file type, and filename/subject (to the extent

18

they do not reveal protected content).  In addition, the withholding or redacting Party shall also indicate for each document on their privilege log the privilege being asserted (e.g., "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed); the Bates numbers for redacted documents; and a unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents (e.g., "Def_Priv_00001").  The Producing Party may include only a single privilege log entry for multiple email messages in the same email thread to the extent such messages are contained in a single "inclusive" email thread and subject to the same claim of privilege.  In lieu of a document-by-document description of the nature of the withheld or redacted document sufficient for an opposing party to assess the privilege, the parties agree that in the first instance, a party can satisfy its obligations to provide a privilege log by providing a log containing the metadata described in this section.  A party receiving such a log can make reasonable requests for additional information sufficient to substantiate claims of privilege for specific entries. The Parties will meet and confer should any party request the use of categorical privilege logs.

44.    The Parties will meet and confer to determine the deadlines for the Parties to exchange privilege logs.  Absent express agreement, if documents are produced on a rolling basis, the privilege log relating to the documents withheld

from each production will be produced thirty (30) days after each production volume is transmitted. Final privilege logs shall be exchanged no later than sixty (60) days after the Court ordered date for substantial completion of document production.

## VIII. Miscellaneous Provisions

45. **Protective Order**. All productions are subject to the Stipulated Protective Order entered by the Court in this Action, including any amendments to that Stipulated Protective Order.

**Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

SO ORDERED this 14th day of January 2025.

The Honorable Thomas W. Thrash, Jr.
United States District Court
Northern District of Georgia

Consented to by,

/s/ *John R. Bevis*

John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

/s/ *Norman E. Siegel*

Norman E. Siegel, MO Bar No. 44378
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

### *MDL Co-Lead Counsel*

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com

Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
akeller@dlcfirm.com

### *OnStar Track Co-Lead Counsel*

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 24th Floor
New York, New York 10169
Tel: (212) 223-4478
jguglielmo@scott-scott.com

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
ssoneji@tzlegal.com

### *LNRS/Verisk Track Co-Lead Counsel*

Kiley L. Grombacher
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: (805) 270-7100
Kgrombacher@bradleygrombacher.com

P. Graham Maiden
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9670
gmaiden@motleyrice.com

Adam E. Polk
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
apolk@girardsharp.com

Emily E. Hughes
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
eeh@millerlawpc.com

Thomas E. Loeser
**COTCHETT, PITRE & MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA  98103
Tel: (206) 802-1272
tloeser@cpmlegal.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

*OnStar Track Steering Committee*

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com

Jennifer M. French
**LYNCH CARPENTER, LLP**
1234 Camino Del Mar
Del Mar, California 92014
Tel: (619) 762-1903
jennf@lcllp.com

Stuart A. Davidson
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Blvd., Suite 720
Boca Raton, Florida 33432
Tel: (561) 750-3000
sdavidson@rgrdlaw.com

Gary S. Graifman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Rd., Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000

ggraifman@kgglaw.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

Chris Springer
**KELLER ROHRBACK LLP**
801 Garden Street, Suite 301
Santa Barbara, California 93101
Tel: (805) 456-1496
cspringer@kellerrohrback.com

*LNRS/Verisk Track Steering Committee*

M. Brandon Smith
**CHILDERS, SCHLUETER & SMITH LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

*Plaintiffs' Liaison Counsel*

/s/ Susan M. Clare
David L. Balser, GA Bar No. 035835
Susan M. Clare, GA Bar No. 262830
John C. Toro, GA Bar. No. 175145
Paige L. Burroughs, GA Bar No. 930167
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-4600
dbalser@kslaw.com
sclare@kslaw.com

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja
**HOGAN LOVELLS US LLP**
1735 Market Street, Floor 23
Philadelphia, PA 19103

*Counsel for Defendant Verisk
Analytics, Inc.*

*Counsel for Defendants General Motors
LLC and OnStar, LLC*

/s/ *Ronald I. Raether, Jr.*

Ronald I. Raether, Jr.
**TROUTMAN PEPPER LOCKE LLP**
100 Spectrum Center Drive
Suite 1500
Irvine, California 92618
Tel: (949) 622-2700
ron.raether@troutman.com

Julie Hoffmeister Smith
Timothy J. St. George
**TROUTMAN PEPPER LOCKE LLP**
1001 Haxall Point
Richmond, Virginia 23219
Tel: (804) 697-1200
julie.hoffmeister@troutman.com
timothy.st.george@troutman.com

Cindy D. Hanson
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
Tel: (404) 885-3000
cindy.hanson@troutman.com

***Attorneys for Defendant LexisNexis Risk Solutions Inc.***

**APPENDIX 1**
PRODUCTION MEDIA AND LOAD FILE FORMATS

**Production Media**

1.      The Producing Party shall produce documents on readily accessible, computer or electronic media including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure Online Repository agreed upon by the parties) or via secure FTP site. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates Number the documents produced.

**Image Load Files**

2.      Production image load files shall have all corresponding images logically grouped together;

3.      Production volumes should only include one image load file per production volume;

4.      The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii[1] extension (*e.g.*, ABC001.lfp);

---

[1]      If a .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file itself.

5.      The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*);

6.      The load file shall contain one row per TIFF or JPG image;

7.      Every image in the delivery volume shall be contained in the image load file;

8.      The image key shall be named the same as the Bates number of the page;

9.      Load files shall *not* span across media (*e.g.*, CDs, DVDs, hard drives, *etc.*), *i.e.*, a separate volume shall be created for each piece of media delivered.

**Metadata Load Files**

10.      The metadata load file shall use the following delimiters:

a)      Column Delimiter: ASCII character (020)
b)      Text Qualifier: þ ASCII character (254);
c)      New line: Registered sign - ® (ASCII 174).

11.      Data for documents shall be produced in only one data load file throughout the productions, unless that document is clearly noted as being a replacement document or if supplemental custodian information is provided;

12.      The first line shall contain the field names in the order of the data set forth in Appendix 2;

13.      Metadata fields that are not applicable to a document shall still be populated in the data load file with Empty Quotes, eg |^^|^^, *etc*;

14.     A carriage-return line-feed shall be used to indicate the start of the next record;

15.     Load files shall **not** span across media (*e.g.*, CDs, DVDs, hard drives, *etc.*); a separate volume shall be created for each piece of media delivered;

16.     The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (*i.e.*, ABC001.dat); and

17.     The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

**Appendix 2**
DOCUMENT INFORMATION AND METADATA TO BE PRODUCED

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodian | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Folder | Text | | File path/folder structure for the original native file as it existed in the ordinary course of business | File path/folder structure for the original native file as it existed in the ordinary course of business. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |

| From | Text - paragraph | | | Sender of message |
|------|------|------|------|------|
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date (mm/dd/yyyy) | | | Date message sent |
| Time_Sent | Time (hh:mm:ss) | | | Time message sent |
| Date_Rcvd | Date (mm/dd/yyyy) | | | Date message received |
| Time_Rcvd | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |

| Date_Created | Date/Time (mm/dd/yyyy) | | Date file was created | |
|---|---|---|---|---|
| Date_LastMod | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted for the document | Any confidentiality designation asserted for the document |
| Redacted | Text | If document contains redactions, field will be populated with "Has Redactions" | If document contains redactions, field will be populated with "Has Redactions" | If document contains redactions, field will be populated with "Has Redactions" |
| Has Hidden Content[2] | Text | | Y if hidden content, otherwise N or empty | |
| MD5 Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| Time Zone Field | Text | | Time Zone used to process data | Time Zone used to process data |
| NativeLink | Text - paragraph | | Path including filename to the associated native | Path including filename to the associated native |

---

[2] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.  The field "Has Hidden Content" will be populated to the extent practicable.

| | | | file if produced (Relative Path) | file if produced (Relative Path) |
|---|---|---|---|---|
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |